# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs October 18, 2011

## SHEILA MARIE LOTT v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of Bedford County**
**No. 12158      Lee Russell, Judge**

**No. M2010-02637-CCA-R3-PC - Filed January 4, 2012**

Sheila Marie Lott ("the Petitioner") filed for post-conviction relief alleging (1) that she received ineffective assistance of counsel in conjunction with her open plea and effective sentence of eighteen years and six months to one count of theft over $1000, eight counts of criminal simulation, and one count of fraudulent use of a credit card; and (2) that her plea was not voluntarily made. After an evidentiary hearing, the post-conviction court denied relief, and the Petitioner has appealed. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Emeterio R. "Terry" Hernando, Lewisburg, Tennessee, for the appellant, Sheila Marie Lott.

Robert E. Cooper, Jr., Attorney General & Reporter; Nicholas W. Spangler, Assistant Attorney General; Charles Crawford, District Attorney General; Michael Randles, Assistant District Attorney General; for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

### *Guilty Plea*

The Petitioner was indicted in 2007 on one count of theft over $1000, eight counts of criminal simulation, and one count of fraudulent use of a credit card. On April 3, 2008, the Petitioner entered an open plea[1] to all indicted counts.[2]

At the plea hearing, the State recited a factual basis for the criminal simulation charges, stating that, over the span of several days in June of 2007, the Petitioner purchased items at Wal-Mart using four Visa and four American Express traveler's checks. In most of these transactions, the Petitioner then returned the purchased items to Wal-Mart to receive cash. All of the traveler's checks were counterfeit. Although the Petitioner stated to an investigator that she did not know the checks were counterfeit, she indicated that she had a suspicion of that possibility.

As to the theft and credit card charges, the State recited that the Petitioner's employer reported that over the course of a month, there was a discrepancy between the posted and actual revenues of over $7000. Additionally, there was a company credit card on which a transaction had been made at Wal-Mart. Although the Petitioner stated to her employer that she did not possess the company credit card, video surveillance from Wal-Mart showed that it was in fact the Petitioner who made the credit card transaction without permission from her employer.

The Petitioner stated at the plea hearing that she was currently taking Lortab 10, Sythroid, and Zoloft. The Petitioner indicated that she took all her medications as prescribed by her doctor and that none of the medications affected her thinking. She agreed that she did not know of any reason that she would not be able to understand the proceedings. The Petitioner told the trial court that she received her Bachelor's degree in culinary arts and science from Ball State, and she acknowledged that she can read and write.

During the plea colloquy between the Petitioner and the trial court, the trial court established that the Petitioner had reviewed her written plea document with her lawyer and

---

[1] In an open plea, the defendant pleads guilty, but there is no agreement on sentencing. The sentencing decisions are left for the trial court to decide.

[2] The Petitioner entered a best interest plea to the theft and fraudulent use of a credit card charges. She entered guilty pleas to the criminal simulation charges.

that she "absolutely" understood it; that she understood her potential sentence range for each of her offenses; that she understood that, by pleading open, she was pleading guilty and not guaranteed a certain sentence or manner of serving that sentence but that instead the sentencing determination would take place at a later sentencing hearing; and that she understood the elements of the offenses for which she was pleading guilty. The Petitioner also agreed that she understood her rights to a jury trial, to confront the witnesses against her, to remain silent, and to representation throughout the criminal proceedings against her; the potential sentence if a jury convicted her as well as the potential sentence at her sentencing hearing; that these convictions could be used against her to enhance sentences for later convictions; that she was waiving her right to appeal from the convictions but that she could still appeal the sentencing of these convictions; and that she was entering the open plea freely and voluntarily. The trial court asked the Petitioner whether she "personally made the decision to plead open on these charges," and the Petitioner agreed. She also agreed that no one had threatened her to force her to plead open. The Petitioner told the trial court that her counsel for the plea proceeding ("trial counsel") was "a wonderful attorney."

The trial court then determined that the Petitioner "underst[ood] both the direct and the relevant collateral consequences of an open plea" and that she was "entering into this open plea understandingly and voluntarily." The trial court accepted the Petitioner's open plea and set the sentencing hearing for June 5, 2008.

*Sentencing Hearing*

At the sentencing hearing, the Petitioner testified that, before the incidents giving rise to the theft charge, she had hurt her back at work such that she was unable to walk. She requested worker's compensation, but was initially denied. She stated that her direct supervisor instructed her to call a doctor used by their company in the past but that she had to pay cash for the medical services. The Petitioner explained that her supervisor then told her to use the company money to pay for the medical bills, stating that he told her to "do what [she] had to do." According to the Petitioner, were it not for the money she took from her employer, she would not have been able to cover her medical expenses.

The State, however, asked the Petitioner to explain the fact that the thefts at her company began on August 6, 2007, but that her injury did not occur until August 10, 2007. The Petitioner denied stealing any money until after the time of her injury, and she stated that the company had "issues with the register" prior to August 10, 2007.

Based upon the Petitioner's prior convictions, the trial court determined that the Petitioner should be sentenced as a Range II multiple offender. The trial court, after consideration of the appropriate factors, sentenced the Petitioner to three and a half years for

each count of the simulation convictions, eight years for the theft over a thousand dollars conviction, and eleven months and 29 days for the fraudulent use of a credit card conviction. In determining whether each sentence should run concurrent or consecutive to the others, the trial court stated,

> I do agree with the [State] that it is mandatory that the sentences in [the criminal simulation charges] and [the theft and fraudulent use of a credit card charges] be consecutive to one another . . . . We have seven factors to look at, to see if, as far as a discretionary decision is concerned to see if the presumption of concurrent sentencing is overcome. Factor number two is an extensive criminal record. To say that she has an extensive criminal record would be a very dramatic understatement. She does indeed.
>
> Further she committed these offense [sic] while on probation in some cases, probation from one case, and some from two cases, so any presumption in favor of concurrent sentencing has been very dramatically overcome on this record. I do not however feel that it would be appropriate to make all of these sentences consecutive because of the net effect of that.
>
> So, as far as [the criminal simulation charges], I'm going to make one, two, and three concurrent with one another, so that's three and a half. Four, five, and six concurrent with one another, so that's another three and a half. Seven and eight concurrent with one another, so that's another three and a half. So, that's ten and a half and I make them consecutive to the eight years she's receiving on [the theft and fraudulent use of a credit card charges]. I'm going to fold in, I'm going to give her a sentence of 11/29 on the A misdemeanor using, even though that is a misdemeanor, I'm using the same considerations that apply to felony sentencing; however, I'm folding that 11/29 in with the rest of the sentence.

In total, the trial court sentenced the Petitioner to eighteen years and six months. The Petitioner appealed the sentence, and this Court affirmed the sentence on direct appeal. State v. Sheila Marie Lott, No. M2008-02127-CCA-R3-CD, 2010 WL 565664, at *1 (Tenn. Crim. App. Feb. 18, 2010). The Petitioner filed her *pro se* petition for post-conviction relief on September 27, 2010. The post-conviction court appointed counsel ("post-conviction counsel") on October 6, 2010, to represent the Petitioner in the post-conviction proceedings, and post-conviction counsel filed an amended petition on November 15, 2010.

The Petitioner testified at the post-conviction hearing that the State had alleged at the sentencing hearing that she had been convicted of over twenty felonies. However, one of the two specific felonies used by the State to establish that the Petitioner was a Range II offender was a felony listed from Ohio. The Petitioner stated that the Ohio charge was never filed in court, and, thus, there was no conviction. The Petitioner indicated that she could prove that several of the felonies that the State alleged she had were actually misdemeanors. According to the Petitioner, after the trial court issued its sentence at the sentencing hearing, trial counsel slammed her papers on the table and said to the Petitioner, "I told you." The Petitioner clarified this statement by saying that earlier in the day, before the Petitioner's hearing, trial counsel and the State were talking together and they both turned to look at her and laugh. Then, the Petitioner met with trial counsel, and trial counsel suggested that the Petitioner accept the twelve-year plea bargain because trial counsel feared that the trial court would "stack the charges." According to the Petitioner, when the State mentioned that the Petitioner had over twenty felonies, she turned to trial counsel and said, "no, that's not true," but trial counsel ignored her and did not object. The Petitioner further indicated that this mistake prejudiced her because the number of felonies were used in establishing the sentence range. On cross-examination, the State asked the Petitioner, "do you agree that you have at least two felony convictions?" and the Petitioner agreed. The Petitioner also acknowledged that she qualified as at least a Range II offender when the trial court issued its sentence. She now understood, although she claimed that she did not understand at the time of the sentencing hearing, that Range II only required two felony convictions.

The State asked trial counsel whether she remembered the Petitioner bringing to her attention the fact that there were allegedly errors regarding the Petitioner's previous convictions listed in the Presentence Report. Trial counsel said, "No," and that they even discussed the convictions listed in the report. In fact, trial counsel indicated that she told the Petitioner, "with all of these convictions on here, it's going to be – it could be very bad if you elect to have a sentencing hearing and the [trial court] sees all of this list of convictions." Trial counsel stated that she attempted to convince the Petitioner to take the twelve-year plea bargain and that, at the conclusion of the sentencing hearing, she said to the Petitioner, "I told you." Trial counsel denied ever laughing at the Petitioner and testified that she defended the Petitioner to the best of her abilities.

The Petitioner also testified that trial counsel would not return her phone calls until one or two days before the day she was to appear in court. Additionally, the Petitioner indicated that trial counsel instructed her on one occasion to get a note from her doctor explaining that the Petitioner would be unable to appear in court because it was the same day as the day she had surgery on her back. The Petitioner agreed that the case, in fact, was

continued. The Petitioner acknowledged that, at the plea hearing, she stated that she had "absolutely" no complaints about trial counsel's representation and "absolutely" no difficulty communicating with trial counsel. When the State pointed out that the Petitioner's testimony at the plea hearing regarding her satisfaction with trial counsel was in direct opposition to her testimony at post-conviction, the Petitioner asked to "plead the Fifth."

The Petitioner then testified, "Had I known that my sentence was going to be what it was, there's no way in the world I would have not taken it to trial." The Petitioner asserted that trial counsel should have spoken with the doctor treating her for her back injury, the doctor's office manager, and the Petitioner's direct supervisor who allegedly told her to take the company's money to pay her medical expenses.

Trial counsel acknowledged her awareness of the Petitioner's story that the Petitioner's supervisor allegedly told the Petitioner to take the company's money in order to pay medical expenses. However, trial counsel did not interview the doctor or subpoena records because she did not find this explanation to be a viable defense to the theft. Trial counsel also testified that the Petitioner asked her to interview the Petitioner's direct supervisor. Trial counsel indicated that she told the Petitioner she would interview the supervisor if the Petitioner could convince him to come to trial counsel's office and give testimony favorable to the Petitioner. The Petitioner also told her to interview the regional director within her employment, but trial counsel knew the witness would be testifying against the Petitioner. In support of this contention, trial counsel noted that the regional director wrote a victim impact statement requesting the maximum punishment. Trial counsel stated that she did not subpoena other employees at the Petitioner's workplace because she "thought it was irrelevant."

The Petitioner's next complaint related to the amount of money she allegedly stole from her employer. The Petitioner stated that she only took $3,827.84, not $7,000, from her employer and that she had receipts from medical bills to account for that entire amount. However, she acknowledged that, because her conviction was for theft between $1,000 and $10,000, the discrepancy in the amount stolen would not change the conviction.

Regarding the criminal simulation charges, the Petitioner asserted that there was a discrepancy between the trial court's oral and written sentences. She contended that the trial court never used the word "consecutive" when it grouped the simulation charges into three sets of three and a half year terms. The Petitioner stated, "At no time . . . does [the trial court] say, [']I'm going to make One, Two and Three concurrent with one another but consecutive to Four, Five, Six, Seven and Eight and so on.['] No where does it say that. But on the paper, it's wrote [sic] that." The Petitioner indicated that she did not think that trial

counsel was listening because as soon as the trial court issued its sentence, trial counsel asked about an appeal bond.

Post-conviction counsel attempted to clarify with the Petitioner what her claim was against trial counsel from the trial court's issue of its sentencing. The Petitioner said, "she's the one that's supposed to catch that stuff." The State asked the Petitioner what she believed to be the trial court's sentence for the simulation charges. After some discussion, the Petitioner agreed that the trial court gave a total sentence for all the simulation charges of ten and a half years and that it was consecutive to the sentence of eight years, which was eighteen and a half years in total. However, she adamantly asserted that the trial court failed to use the term "consecutive" when discussing how the groups of simulation charges related to one another. Trial counsel testified that, when the trial court issued the Petitioner's sentence, the Petitioner never gave an indication that she did not understand that sentence. Moreover, trial counsel understood the trial court's sentence to mean that the three groups of simulation charges were consecutive to each other for a total of ten and a half years.

As to her last issue, the Petitioner explained that she learned right before her plea hearing that her father, whom she had not seen in five years, was dying. She then said that trial counsel called her and told her that "if I didn't accept this – or do this, then [the trial court] was putting me in jail that day." However, the Petitioner indicated that her mind was not right because she needed to see her father. She testified, "I'm not saying nobody threatened me or anything like that. I'm saying what was said. And that's why I did as I did. I did not even want to plead guilty, none whatsoever, to the theft, period." The State walked the Petitioner through her testimony at the plea hearing, and the Petitioner acknowledged that she repeatedly told the trial court that nothing was affecting her thinking. When the State asked the Petitioner about her claim that her prescription medications were in fact affecting her thinking, the Petitioner again said that she "plead[ed] the Fifth."

Trial counsel testified that, according to the Petitioner, the Petitioner was on prescription medication, but the Petitioner told trial counsel that the medication did not affect the Petitioner's thinking. Further, trial counsel stated that if she had a concern that the Petitioner's medication was a hindrance to the Petitioner's understanding of the proceeding, trial counsel would have brought that fact to the attention of the trial court. However, trial counsel did not detect any sign of the medication affecting the Petitioner's thinking.

The post-conviction court denied the Petitioner post-conviction relief. Specifically, the post-conviction court found that the Petitioner's testimony that her supervisor instructed her to take company earnings to pay for medical treatment of a job-related injury was not credible, given the fact that money was stolen before the injury ever occurred. Furthermore, the post-conviction court held that, because the Petitioner did not call any of the individuals

to testify that she claimed trial counsel failed to interview, there was a "total failure to prove that but for the failure to interview . . . , the outcome of the case would have been any different." Regarding the Petitioner's allegation that trial counsel failed to object to the trial court's explanation of its sentence, the post-conviction court held that trial counsel's actions were not deficient because the oral sentence was clear and consistent with the written sentence.

As to the Petitioner's claim that her plea was not voluntary, the post-conviction court noted that the Petitioner's prescription medication was discussed at the plea hearing and that the Petitioner told the trial court that her medication did not affect her understanding of the proceedings. Moreover, at the post-conviction hearing, the Petitioner did not allege that she was taking additional medications or greater amounts of the medication than what she told the trial court at the plea hearing. Thus, the post-conviction court held that neither the medication nor her emotional state from her father's illness rendered her plea involuntary. The Petitioner timely appealed, arguing that she received ineffective assistance of counsel and that her plea was not voluntary as constitutionally required.

## **Analysis**

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel and challenges to the validity of a guilty plea, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Jaco v. State, 120 S.W.3d 828, 830-31 (Tenn. 2003); Sexton, 151 S.W.3d at 531.

-8-

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his or her lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

*The Petitioner's Allegations of Ineffective Assistance*

Turning to the Petitioner's first claim of ineffective assistance of counsel, the Petitioner asserts that trial counsel failed to interview several individuals, including the doctor who treated her back injury, an attorney who helped with her worker's compensation claim, her direct supervisor who allegedly instructed the Petitioner to steal the company earnings, and several other employees within that company. However, the Petitioner failed to call any of these individuals to testify at the post-conviction hearing. Because these individuals did not testify at the post-conviction hearing, we do not know what information they would have provided to trial counsel had trial counsel interviewed them. We agree with the post-conviction court that it is impossible to determine whether the failure to interview these individuals was prejudicial to the Petitioner. See Wiley v. State, 183 S.W.3d 317, 333 (Tenn. 2006) (holding that the petitioner failed to prove that counsel's performance was deficient or prejudicial in failing to interview certain individuals because the petitioner did not call those individuals at the post-conviction hearing). Therefore, the Petitioner is not entitled to relief on this basis.

In her other ineffective assistance of counsel claim on appeal, the Petitioner contends that, "since the [trial] court failed to pronounce whether the sentences run consecutive in [the criminal simulation] counts," trial counsel's assistance was deficient because trial counsel failed to object at the time the trial court issued the oral sentence. However, trial counsel testified at the post-conviction hearing that it seemed clear to her what the trial court meant when it issued its sentence. Moreover, the Petitioner never mentioned to trial counsel that the trial court's sentence was confusing to the Petitioner. Furthermore, the Petitioner agreed with the State at the post-conviction hearing that the trial court's oral sentence for the simulation charges was ten and a half years, despite the fact that he did not use the word "consecutive" when he discussed the groupings of the charges. Accordingly, we hold that the Petitioner has failed to show that trial counsel's performance was deficient. Therefore, the Petitioner is not entitled to relief on the basis of ineffective assistance of counsel.

*Validity of Guilty Plea*

The Petitioner also asserts that her plea was not voluntarily made. She complains that "she was coerced and unlawfully induced into pleading guilty to all the charges when [trial counsel] badgered and took advantage of her condition in that she was on multiple pain killers and in emotional distress over the news of her dying father."

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. Jaco, 120 S.W.3d at 831 (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our Supreme Court set forth the procedure that a trial court should follow when accepting a guilty plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially comply" with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989). A trial court can look to a number of factors to find a "knowing and intelligent plea," including "[t]he relative intelligence of the petitioner, the degree of his [or her] familiarity with criminal proceedings, the opportunity to confer with competent counsel and the trial court regarding the charges faced, and the desire to avoid a greater punishment resulting from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As to the Petitioner's contention that she was "coerced" into pleading guilty, the trial court asked her at length about her prescription medications prior to her plea. The Petitioner assured the trial court that the medication had no effect on her understanding of the

proceedings. The post-conviction court also noted one of the trial court's questions that it asked the Petitioner: "are you having a health problem today that would keep you from understanding what we're talking about during this hearing?" The Petitioner then replied, "No, Sir." Although the Petitioner contends that trial counsel coerced the Petitioner to plead guilty despite knowing the Petitioner's emotional state and the influence of prescription drugs, trial counsel testified at the post-conviction hearing that the two of them discussed the Petitioner's medication prior to the plea hearing. Moreover, trial counsel testified that she would have brought the matter to the attention of the court if she perceived that the Petitioner's plea might not be knowing or voluntary. The post-conviction court found that the Petitioner was able to understand the plea into which she was entering and that trial counsel never told the Petitioner to mislead the court regarding her use of prescription drugs. Thus, the post-conviction court found trial counsel's testimony regarding this matter to be more credible than the testimony of the Petitioner. We defer to the post-conviction court's findings regarding the credibility of witnesses. See Momon, 18 S.W.3d at 156. Furthermore, we agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that her plea was not made knowingly and voluntarily. See Tenn. Code Ann. § 40-30-110(f); Momon, 18 S.W.3d at 156. Therefore, the Petitioner is entitled to no relief on this basis.

## Conclusion

The Petitioner has failed to prove by clear and convincing evidence that she was denied effective assistance of counsel or that her plea was not voluntarily made. We therefore affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE